IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
EASTERN DIVISION

**BILLY T. LOVELACE**                                                                          **PETITIONER**
**REG. # 03919-095**

VS.                              CASE NO. 2:05CV00232 JMM/HDY

**LINDA SANDERS,**
**WARDEN, FCI FORREST**
**CITY, ARKANSAS**                                                                             **RESPONDENT**

**PROPOSED FINDINGS AND RECOMMENDATIONS**

**INSTRUCTIONS**

  The following recommended disposition has been sent to United States District Court Judge James M. Moody. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than eleven (11) days from the date of the findings and recommendations. The copy will be furnished to the opposing party. Failure to file timely objections may result in waiver of the right to appeal questions of fact.

  If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at

1

the same time that you file your written objections, include the following:

1. Why the record made before the Magistrate Judge is inadequate.

2. Why the evidence proffered at the hearing before the District Judge (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

3. The detail of any testimony desired to be introduced at the hearing before the District Judge in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

> Clerk, United States District Court
> Eastern District of Arkansas
> 600 West Capitol Avenue, Suite 402
> Little Rock, AR 72201-3325

## DISPOSITION

Billy T. Lovelace, a federal prisoner housed at the Federal Correctional Institution ("FCI") in Forrest City, Arkansas, brings this action pursuant to 28 U.S.C. § 2241. Mr. Lovelace was convicted in the United States District Court, Middle District of Louisiana, and sentenced on January 31, 2003, to a sentence of fifty-one months of imprisonment. He states that he "self-surrendered" to the prison at Forrest City in March of 2003.

The sole claim for relief in this case relates to his placement in a halfway house (also known as "Community Correction Center" or "CCC"). Mr. Lovelace asks that the Court order

the respondent to place him in CCC for the final six months of his sentence.  He cites *Elwood v. Jeter*, 386 F.3d 842 (8th Cir. 2004) and the Bureau of Prisons ("BOP") policy prior to December of 2002 in support of his petition.

An overview of the events leading to this case is helpful.

**The "Old" Policy:**    Prior to December of 2002, the "BOP had a policy of allowing prisoners to serve their last six months of incarceration in a CCC regardless of what percent of the sentence this six months comprised." *Elwood v. Jeter*, 386 F.3d 842, 844 (8th Cir. 2004).  This policy was favorable toward prisoners with relatively short sentences, such as Mr. Lovelace, allowing them to serve a significant percentage of their sentence in a CCC.

**The December 13, 2002 Opinion of the Department of Justice's Office of Legal Counsel ("OLC"):**   The OLC , in response to an inquiry by the BOP and construing 18 U.S.C. § 3621(b) and 3624(c), concluded, among other things, that the "BOP had no authority to transfer a prisoner to a CCC, except *for the lesser of* the last ten percent of the sentence and the last six months of the sentence." *Id.*, at 845 (emphasis added).

**The OLC Opinion Struck Down:**    The OLC's opinion of December, 2002, and the BOP's application of that opinion were struck down.  The Eighth Circuit Court of Appeals, in the previously cited *Elwood* case, construed the pertinent statutes and held that the BOP has the discretion to transfer prisoners to a CCC at any time during their incarceration.  The BOP is under an obligation to place prisoners in conditions that will afford them a reasonable opportunity to adjust to and prepare for re-entry into the community.  According to *Elwood*, this duty exists during a reasonable part of the last ten percent of the prisoner's term, to the extent practicable, and the duty shall not extend beyond the last six months of the sentence.  The upshot

of *Elwood* is that the BOP must shoulder its duty of preparing an inmate for re-entry into the community, and the BOP has a good deal of flexibility in discharging its duty.

**The February 2005 Policy:** In response to *Elwood* and *Goldings v. Winn*, 383 F.3d 17 (1st Cir. 2004) (another case striking down the OLC opinion), new BOP regulations were enacted, effective February 14, 2005. These regulations, found at 28 C.F.R. Part 570, are as follows:

§ 570.20 What is the purpose of this subpart?

(a) This subpart provides the Bureau of Prisons' (Bureau) categorical exercise of discretion for designating inmates to community confinement. The Bureau designates inmates to community confinement only as part of pre-release custody and programming which will afford the prisoner a reasonable opportunity to adjust to and prepare for re-entry into the community.
(b) As discussed in this subpart, the term "community confinement" includes Community Corrections Centers (CCC) (also known as "halfway houses") and home confinement.

§ 570.21 When will the Bureau designate inmates to community confinement?

(a) The Bureau will designate inmates to community confinement only as part of pre-release custody and programming, during the last ten percent of the prison sentence being served, not to exceed six months.
(b) We may exceed these time-frames only when specific Bureau programs allow greater periods of community confinement, as provided by separate statutory authority (for example, residential substance abuse treatment program (18 U.S.C. 3621(e)(2)(A)), or shock incarceration program (18 U.S.C. 4046(c)).

The February 2005 Policy acknowledges that the pertinent statute, § 3621(b), gives the BOP discretion to place prisoners in a CCC prior to the last ten percent of the sentence being served. The February 2005 Policy exercises this discretion, in advance, in every case, by limiting CCC confinement to the last ten percent of the sentence being served.

**The February 2005 Policy Held Invalid:** United States District Judge George Howard, Jr., in *Fults v. Sanders*, No. 2:05CV00091 GH/HLJ, recommended disposition at 7-8 (E.D. Ark.

July 8, 2005), adopted by order of district court (July 22, 2005), held the February 2005 Policy invalid, finding:

> This court does not doubt the BOP, in implementing the statutes governing placement of inmates, can "rely on rulemaking to resolve certain issues of general applicability unless Congress clearly expresses an intent to withhold that authority." *Lopez v. Davis*, 531 U.S. 230, 244 (2001). In *Lopez*, the Court upheld a BOP regulation excluding offenders who had possessed a firearm during their offense from participating in the early release program established under 18 U.S.C. § 3621(e)(2)(B). "The Bureau is not required continually to revisit 'issues that may be established fairly and efficiently in a single rulemaking proceed[ing] . . . . The Bureau reasonably concluded that an inmate's prior involvement with firearms, in connection with the commission of a felony, suggests his readiness to resort to life-endangering violence and therefore appropriately determines the early-release decision[.]'" *Id.*
>
> As a District court in the Eastern District of New York has observed, however,
>
>> [h]ere, rather than merely delineate the boundaries of its discretion consistent with congressional intent as in *Lopez*, the February 2005 Rule removes all discretion in all cases in determining whether to transfer an inmate to a CCC at any time prior to the last ten percent of the inmate's sentence. While BOP has the authority to clarify the contours of its discretionary authority as it relates to certain classes of issues, this court is unconvinced that BOP may categorically remove its entire ability to exercise its discretion, where, as here, the enabling statute provides specific factors relevant to whether CCC placement may be appropriate prior to the last ten percent of a prisoner's sentence.
>>
>> Although Section 3621(b) sets forth several factors intended to inform BOP's decision-making with regard to CCC placement prior to the last ten percent of an inmate's sentence, unlike the rule promulgated in *Lopez*, the February 2005 Rule in no way furthers or interprets these factors.
>
> *Pimentel v. Gonzalez*, [367 F.Supp.2d 365, 374-75 (E.D.N.Y. 2005)]. The Court [in *Pimentel*] further found the legislative history for § 3621(b) "call on the agency to consider" the factors set forth in the statute and concluded that the "February 2005 Rule fails because it in no way relates to or considers these factors with regard to transfer to a CCC." [footnote omitted.] This court agrees. While the BOP labeled the rule a "categorical exercise of discretion" it did not exercise

its discretion at all. It merely repackaged the December 2002 blanket rule that was rejected in *Elwood*."

*Fults*, No. 2:05CV00091 GH/HLJ, recommended disposition at 6-8.

We adopt the rationale of the *Fults* decision and find the February 2005 Policy invalid. As a result, we recommend that the petition for writ of habeas corpus be granted and that the respondent be directed to (a) consider, within twenty days and in good faith, transferring petitioner to a CCC for the last six months of his sentence in accordance with the factors taken into account by the BOP prior to its adoption of the December 2002 policy; and (b) place petitioner in conditions that will afford him a reasonable opportunity to adjust to and prepare for his reentry into the community during a reasonable part of the last ten percent of his term, to the extent practicable, not to exceed six months. *Fults*, No. 2:05CV00091 GH/HLJ, recommended disposition at 8.

**An additional issue raised by the respondent:** In addition to countering the petitioner's arguments on the merits, the respondent contends the petition should be dismissed for another reason: the respondent contends the petitioner has failed to state a claim upon which relief may be based. Specifically, the respondent claims that since there is no constitutional right to be housed in any particular type of facility, much less a halfway house, the petition should be dismissed. This argument fails for two reasons. First, the case is not a pure assertion of a right to be housed in a particular facility. Rather, the case involves the construction of federal statutes, BOP policies, and the implementation of the statutes and policies. While the right to be considered for placement in a halfway house is implicated, the case is not a direct assertion of the right to be housed at a requested facility. Second, the cases preceding this one, from *Elwood v.*

*Jeter*, 386 F.3d 842, 844 (8th Cir. 2004) to the present, including the recent *Fults v. Sanders* case in this Court, demonstrate that relief may be awarded under exactly these circumstances.

**Conclusion:** Following the rationale expressed in *Fults v. Sanders*, and finding no merit in the remaining argument of the respondent to the contrary, we recommend that the petition for writ of habeas corpus be granted. The petitioner's requested relief is that the respondent be directed to place him in CCC for the final six months of his sentence. This requested relief is denied. Instead, we recommend that the respondent be directed to (a) consider, within twenty days and in good faith, transferring petitioner to a CCC for the last six months of his sentence in accordance with the factors taken into account by the BOP prior to its adoption of the December 2002 policy; and (b) place petitioner in conditions that will afford him a reasonable opportunity to adjust to and prepare for his reentry into the community during a reasonable part of the last ten percent of his term, to the extent practicable, not to exceed six months.

DATED this _7_ day of October, 2005.

_____
UNITED STATES MAGISTRATE JUDGE